FILED

2018 JUL -5 PM 4:06

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHCC COMPANY LLC,
f/k/a CHC COMPANY LLC
and CRAIG D. GERMAIN,

CASE NO.: 6:18-CV-1083-ORL-31-KRS

Plaintiffs,

vs.

PILGRIM PIPELINE HOLDINGS LIMITED
LIABILITY COMPANY, EIF PILGRIM,
LLC f/k/a ENERGY INVESTORS FUNDS, LLC
a/k/a ENERGY INVESTORS FUND,
and ARES MANAGEMENT L.P.,

Defendants.
_____/

## COMPLAINT

Plaintiffs, CHCC COMPANY LLC, f/k/a CHC COMPANY LLC ("CHCC") and CRAIG D. GERMAIN ("Germain") (jointly "Plaintiffs"), by and through the undersigned counsel, hereby sue Defendants, PILGRIM PIPELINE HOLDINGS LIMITED LIABILITY COMPANY ("PPH"), EIF PILGRIM, LLC f/k/a ENERGY INVESTORS FUNDS, LLC a/k/a Energy Investors Fund ("EIF"), and ARES MANAGEMENT L.P. ("Ares") (jointly "Defendants"), and allege:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, CHCC, is a Florida limited liability company whose sole member is the GFILI Trust, with its principal place of business in Beaufort County, South Carolina.

2. The GFILI Trust's sole trustee and beneficiary is Lynie Jane Germain, an individual domiciled in and a citizen of Flagler County, Florida.

3. Plaintiff, Germain, is an individual domiciled in and a citizen of Flagler County,

Florida.

4. Defendant, PPH, is a limited liability company whose sole member is EIF, with its principal place of business in Ocean County, New Jersey.

5. Defendant, EIF, is a limited liability company whose sole member is Ares, with its principal place of business in Norfolk County, Massachusetts.

6. Defendant, Ares, is a limited liability company with its principal place of business in Los Angeles County, California.

7. On May 22, 2013, EIF obtained the sole membership interests in PPH through the Development Loan and Equity Option Letter Agreement ("Loan Agreement"). See the Loan Agreement attached as **Exhibit "A."**

8. On January 1, 2015, Ares acquired EIF.

9. As of October 1, 2016, Ares was EIF's sole member.

10. Ares limited partners at the time of acquisition were individuals domiciled in and citizens of the following jurisdictions, pursuant to 28 U.S.C. § 1332 (2012): California; Georgia; Illinois; Massachusetts; New York; Texas; England; Hong Kong, China; and Shanghai, China.

11. AREC Holdings, LTD, is also a limited partner of Ares and is a corporation organized and with its principal place of business in the Cayman Islands, a citizen of same per 28 U.S.C. § 1332.

12. As of October 1, 2016, the general partners of Ares are Ares Partners Holdco, LLC, Ares Management GP, LLC and Ares Voting LLC, limited liability companies, whose sole partners, members, or both are the individuals domiciled in and citizens of the below jurisdictions, pursuant to 28 U.S.C. § 1332: California and New York.

13. Under 28 U.S.C. § 1332 *et seq*, the Court has subject-matter jurisdiction of this case

because the parties are diverse, and the sum in controversy exceeds $75,000.00, plus attorney's fees as provided by contract.

14. Under FLA. STAT. § 48.193 (2018), and by agreement of the parties, personal jurisdiction exists and is proper in Florida, particularly a United States District Court, where Defendant: operates, conducts, engages in, or carries on a business or business venture in Florida or has an office or agency in Florida; engaged in soliciting or service activities in Florida; breached a contract by failing to perform acts requiring performance in Florida; and engaged in substantial activity in Florida.

15. Personal jurisdiction is otherwise proper under the United States Constitution.

16. Pursuant to 28 U.S.C. § 1391 (2012), venue is proper in this District where a substantial part of the events or omissions giving rise to the case occurred.

## COMMON ALLEGATIONS

17. Craig Germain, Plaintiff's manager, has over 45 years of expertise and experience in real estate management and development of energy infrastructure assets and assisting companies, such as start-up real estate and petroleum concerns, with matters such as planning, funding, route selection, permit processing, public relations, and vendor selection, including introduction and coordination of debt and equity providers.

18. At all times relevant to this suit, Plaintiffs performed services for and executed contracts with PPH, through which Plaintiffs exclusively provided services from an office in a Florida residence located at 115 Avenue De La Mer, Suite 702, Palm Coast, Florida 32137.

19. Plaintiffs, through Germain, also met with, and communicated with, Defendant's officers and attorney in Orlando, Florida.

20. Defendants, through PPH at least initially, were involved in a project, initially

requiring approximately $350,000,000.00 to plan, develop, construct, and operate a new petroleum pipeline, consisting of two parallel, underground lines, 16 inches in diameter, buried in a ditch, 6 feet deep, 6 feet wide, approximately 178 miles in length, transporting refined petroleum products from terminals located in the Gulf Coast, East Coast, and New York Harbor to upstate New York ("Project") in addition to other purposes.

21. PPH became aware of Plaintiffs' expertise in real estate and the petroleum business, particularly as to debt and equity matters, and desired to hire Plaintiffs as a finder for the Project, including as to debt and equity for the Project.

22. In March 2012, PPH solicited Plaintiffs' involvement in the Project through two of PPH's authorized representatives, Bryan Greiner ("Greiner") and George Bochis ("Bochis"), both of whom are from Florida.

23. On March 8, 2012, Bryan C. Greiner ("Greiner") on behalf of Nash, Inc. and Germain on behalf of CHCC executed a Fee & Consulting Agreement, which specified that CHCC would obtain a "1.00% of the Equity and Debt raised by, through or from the introduction of an entity/person . . . that provides equity and/or debt for or on behalf of" Greiner on behalf of Nash, Inc. and that "[a]ny earned but unpaid fees after Closing . . . shall accrue interest from the date of Closing compounded monthly, at a rate of 1.5% per month until paid unless otherwise agreed in writing by" Greiner on behalf of Nash, Inc. and CHCC. See the Fee & Consulting Agreement attached as **Exhibit "B."**

24. Greiner and Bochis dealt with Plaintiffs on behalf of and for the benefit of Defendants as to the Project and Defendants knew of Greiner's and Bochis' actions.

25. Defendants benefitted from, accepted, and ratified Greiner's and Bochis' actions.

26. Consequently, Plaintiffs arranged for a meeting between representatives of PPH

and Natixis, a French corporate and investment bank, which could raise debt and equity for the Project.

27. Plaintiffs communicated with PPH and Natixis and set up and facilitated meetings between PPH and Natixis to find a provider of equity, debt or both to finance the Project.

28. Natixis accepted PPH's venture, agreeing to obtain equity and debt financing for the Project, due to Plaintiffs' work as a finder for the Project and Defendants.

29. Due to Plaintiff's work as a finder for the Project and Defendants, on March 22, 2012, Natixis, executed a Mandate Letter ("Mandate Letter") with PPH, confirming the Project's need for $350,000,000.00 and Natixis was retained by Defendant as sole arranger to raise equity and debt for the Project.

30. The Mandate Letter provided for payment of a Finder's Fee to Plaintiff as follows:

> The Company respects and warrants that there are no brokers, representatives or other persons who, by or through the Company, have an interest in compensation in connection with the transactions contemplated by this Mandate Letter, except that GFILI Trust [CHC Company] does have an interest in compensation for an Equity and/or Debt introductory/finder's fees of One Percent [1%] calculated on the gross amount of Equity and/or Debt committed by any Equity and/or Debt provider(s) (as set forth in the herein below described transaction) and payable as the Equity and/or Debt Facility Closing Date(s) as they shall occur.

(Mandate Letter, Page 2, ¶ 5) (emphasis added).

31. PPH adopted, ratified, and approved of the Mandate Letter, which became the operative contract as to the Finder's Fee owed by Defendants to Plaintiffs for finding the debt and equity for the Project.

32. Natixis successfully obtained an investor to provide equity, which agreed to accept the Mandate Letter and Natixis then agreed to provide debt, due to Plaintiff's work as a finder for

the Project and Defendant.

33. On August 25, 2012, CHC Company LLC changed its name to CHCC Company LLC.

34. On August 28, 2012, Defendant and Natixis amended the Mandate Letter in writing ("Amendments to the Mandate Letter"), through Greiner at Nash's Florida office, increasing the financing for the Project to the sum of $770,000,000.00, making other changes, but not altering its references to the Plaintiff's Finder's Fee in the Mandate Letter.

35. Natixis introduced PPH to EIF, another investor, which could provide funding for the Project.

36. Plaintiff fulfilled its obligations to Defendants under the Mandate Letter and Amendments to the Mandate Letter by finding Natixis and EIF to provide debt and equity for the Project.

37. On or about May 13, 2013, the Project successfully closed with EIF as lender, which committed funds for the Project and paid Natixis and Plaintiffs from EIF funds for funding through that time.

38. Defendants would fund future draws due to Plaintiff's work as a finder for the Project and Defendants.

39. On or about May 22, 2013, EIF executed a Development Loan and Equity Option Letter Agreement a/k/a Letter Agreement ("EIF Pilgrim Agreement") with PPH, confirming the funding terms and PPH's then-partial ownership by Avedas Pipeline Partners, LLC ("Avedas").

40. The EIF Pilgrim Agreement was signed for PPH by its managing member, Petroleum Solutions Management, LLC ("Petroleum Solutions"), a limited liability company organized in Florida, and was also signed by Greiner on behalf of Avedas, per Plaintiffs' work as

a finder of debt and equity. The EIF Pilgrim Agreement provides the below condition for closing:

> (vi) Each of the Members shall have executed and delivered to the Agent a pledge agreement (the "<u>Member Pledge Agreement</u>," and, together with the Borrower Security Agreement, the "<u>Collateral Agreements</u>") identical in form and substance to the form attached hereto as <u>Schedule E.</u>

(Letter Agreement, p. 2) (underlining in original).

41. Accordingly, assignment of PPH's membership interests to EIF ("Assignment") was a condition precedent for closing a loan with EIF, which occurred prior to the filing of this suit.

42. On or about May 22, 2013, Petroleum Solutions executed a Senior Secured Promissory Note ("Note") on behalf of PPH to EIF, per the closing and EIF Pilgrim Agreement, due to Plaintiffs' work as a finder for the Project and Defendants.

43. On or about May 22, 2013, PPH, through Petroleum Solutions and Avedas through Greiner, executed the Loan Agreement, in which they assigned, transferred, and pledged their membership interests in PPH to EIF as collateral for the funding, per the closing and EIF Pilgrim Agreement, due to Plaintiffs' work as a finder of debt and equity for the Project and Defendants.

44. EIF obtained ownership of PPH and continues to fund the Project under the Note and Assignment, which is a result of Plaintiffs' performance as a finder of debt and equity for the Project and Defendants.

45. On May 23, 2013, Defendants, through PPH, retained Plaintiffs, through CHCC, under a Contractor Services Agreement, with compensation referencing the terms of the Mandate Letter and Amendments to the Mandate Letter, namely the 1% Finder's Fee, plus a monthly retainer and completion payment.

46. On July 24, 2013, Plaintiffs, through CHCC, and Defendants, through PPH, signed

a Master Services Agreement for services on the Project, per the compensation term in the Contractor Services Agreement.

47. On or about October 10, 2013, Greiner and Bochis met Germain in Orlando, Florida to attempt to get Plaintiffs to assign their work on a project to Avedas, but Plaintiffs would not assign the work to Avedas because Plaintiffs worked for Defendants, who never consented to such an assignment. Bochis then terminated the meeting.

48. On December 31, 2013, Defendants, through PPH, executed and delivered a Confidentiality, Non-Disclosure, Non-Circumvent & Settlement Agreement ("Settlement Agreement") to Plaintiffs, confirming Plaintiffs had earned fees of $76,175.00 and anticipated additional payments for approximately $7,700,000.00. (Settlement Agreement, p. 1; Payment Schedule; Exhibit B). See the Settlement Agreement attached as **Exhibit "C."**

49. The Settlement Agreement defines Plaintiffs, jointly, as the Consultant and PPH as the Employer along with Pilgrim Pipeline Company, Avedas, Augustine Development LLC, Providence Homes and Design. (Settlement Agreement, p. 1).

50. Defendants refused to pay Plaintiffs any monies already earned until Plaintiffs signed the Settlement Agreement, onerously restricting Plaintiffs' work in the northeast part of the United States.

51. In the Settlement Agreement, Defendants, through PPH, stipulated that, during Plaintiffs' tenure with PPH, Plaintiffs formed or caused to be formed Atlantic Access, LLC ("Atlantic Access"), which conducted business from Plaintiffs' Palm Coast, Florida location, entering into discussions and negotiations with various third-party entities to evaluate the feasibility of constructing petroleum pipelines in various U.S. locations, for which Defendants received Atlantic Access's work product from Plaintiffs. (Settlement Agreement, p. 1 and Exhibit

C).

52. Defendants, through PPH, again adopted, approved, ratified and made enforceable all terms of the Mandate Letter in the Settlement Agreement, including the Finder's Fee, expressly referenced in the Settlement Agreement, which states as follows:

> <u>Pilgrim agrees to affirm the past and future commissions earned and owed Consultant with respect to the *ongoing financing* of the Project (see Mandate Letter between Pilgrim and Natixis New York Branch, Section 1, Page 2)</u> and agrees to waive any claims that might exist against Consultant for actions or behavior engaged in by Consultant up through the date of Consultant's resignation, in exchange for Consultant honoring the terms of this agreement.

(Settlement Agreement, p. 1) (emphasis added).

53. In the Settlement Agreement, Defendants, through PPH, waived any claims against Plaintiffs preceding Plaintiffs' resignation as Consultant, effective November 21, 2013, as Plaintiffs completed their services, subject to already-earned fees per the Natixis Letter. (Agreement, p. 1 and Exhibit B).

54. The Settlement Agreement is governed by Florida law and provides for exclusive jurisdiction by an appropriate federal district court as to all legal proceedings arising out of or relating to the Settlement Agreement and are the exclusive forum regarding any dispute or controversy under the Settlement Agreement. (Settlement Agreement, ¶ 11).

55. The Settlement Agreement provides for payment of litigation expenses to a party prevailing in a suit on its provisions, such as reasonable legal fees, costs of investigation, damages and cost of settlement up to $50,000.00. (Settlement Agreement, ¶ 14).

56. Nearly all meetings on the Project, including meetings about the Finder's Fee, involving Plaintiffs and Defendants, occurred in Florida, at the residences of Germain or Greiner or at Greiner's office in Orlando, Florida.

57. Pursuant to the Settlement Agreement, Defendants, through PPH, paid, or were to pay, Plaintiffs by depositing checks or other forms of payment into Plaintiffs' Florida bank account. (Settlement Agreement, ¶ 20).

58. Most of Plaintiffs' work product for the Project was created by Plaintiffs in Florida, which was mailed by Plaintiffs from Florida to Defendants at Defendants' express instructions.

59. Nearly all written communications from Natixis to Greiner regarding the Project were sent to Greiner's Florida office.

60. Nearly all written communications by Plaintiffs on the Project were directed from Plaintiffs' Florida office to Defendants, Greiner, Natixis, and other participants in the Project.

61. On January 1, 2015, Ares acquired EIF, which continued to provide debt, equity or both to PPH for the Project, per Plaintiffs' performance as a finder under the Mandate Letter, Amendments to the Mandate Letter, and Settlement Agreement (jointly "Agreements").

62. On April 24, 2015, per the Agreements, Defendants had paid Plaintiff $172,919.60 as compensation for the Finder's Fee of 1% on the gross amount of equity or debt provided by EIF to PPH up to that date, totaling $17,291,960.00.

63. Plaintiffs, however, remain entitled to payment of the remaining Finder's Fee by Defendant of at least $7,700,000.00 to the Project based upon the final closing sum, per the terms of the Agreements. Specifically, p. 1 of the Settlement Agreement states:

> Consultant has earned fees in the amount of $76,175.00 and anticipates additional payments in the amount of approximately $7,700,000.00 (See Payment Schedule attached as Exhibit B)

64. Greiner met with Germain on March 19, 2014 in St. Augustine, Florida, during which Greiner admitted the Project was doing well, drawing and spending $1,000,000.00 per month against the Letter Agreement dated May 22, 2013, and that Defendants, specifically EIF,

were satisfied with the progress of the Project and approving the monthly funding draws for the Project.

65. As of June 2014, Defendants listed the Project's cost at $820 million.

66. As of June 2015, Ares Energy Investors Fund (EIF) IV committed $195 million to phase 1 of the Project with a projected cost of $980 million.

67. Future phases of the Project represent a "potential combined additional investment opportunity of $350 million" according to Ares.

68. Construction of the Project has continued to date, funded by debt, equity or both by Natixis and EIF to PPH, requiring Defendants' payment of the Finder's Fee to Plaintiffs in accordance with the Settlement Agreement.

69. On July 20, 2015 and August 3, 2015, Plaintiff made written demand for payment of the current Finder's Fee and an accounting of the debt and equity received by Defendant since the prior Finder's Fee payment.

70. On August 4, 2015, Defendants' New Jersey counsel responded to Plaintiff via letter and did not concede the Settlement Agreement is valid and disputed that the Settlement Agreement incorporates the Finder's Fee listed in the Mandate Letter.

71. Defendants' August 4, 2015 Letter refuses to address the amount of debt and equity Defendants obtained since the first Finder's Fee payment but refers to "<u>possible</u> substantial future payments which <u>may</u> be due after construction and other conditions precedent" are met. (emphasis added).

72. Defendants' August 4, 2015 Letter disputes Plaintiffs' right to know if the debt/equity threshold for the Finder's Fee was met and also threatens unspecified legal action against Plaintiffs for breaching the confidentiality clause of the Settlement Agreement.

73. On August 5, 2015, Plaintiffs again made written demand upon Defendants and making demand for the payment due from the debt and equity received by Defendants since the last Finder's Fee payment.

74. On August 17, 2015, Defendants responded to the August 5, 2015 demand in writing, again refusing to disclose debt or equity received by Defendants, contending Plaintiffs "may enjoy substantial future payments, based, in part, upon funding obtained for the Project and other conditions precedent."

75. Plaintiffs fully performed and fulfilled their duties under the Settlement Agreement by finding debt and equity for Defendants through EIF and Natixis, from whom Defendants continue to receive debt or equity for the Project.

76. Clearly, a controversy exists as to whether Defendants will pay the Finder's Fee to Plaintiffs and as to the full amount of such Finder's Fee, requiring the relief sought in this case.

77. All conditions precedent to this suit occurred, were excused, or the performance was futile.

## COUNT I: BREACH OF CONTRACT AND RELATED RELIEF

78. This is an action for breach of contract against Defendants and Plaintiffs reallege and incorporate by reference paragraphs 1-77 as though fully set forth herein.

79. Plaintiffs and PPH entered into and executed the Settlement Agreement, which was a valid contract that incorporated the Mandate Letter, Amendment to the Mandate Letter, and Finder's Fee.

80. EIF acquired PPH and as part of the acquisition PPH assigned EIF the Settlement Agreement.

81. Later, Ares acquired EIF and as part of the acquisition EIF assigned Ares the

Settlement Agreement.

82. The Settlement Agreement stated that if Plaintiffs performed by finding individuals or entities to provide debt, equity, or both for the Project, PPH would pay Plaintiffs a 1% Finder's Fee (1% of the funds provided for the Project by each individual and entity) among other terms.

83. Pursuant to the Settlement Agreement, PPH, and later EIF and Ares as assignees ("Assignees"), "agrees to affirm past and future commissions earned and owed Consultant with respect to the ongoing financing of Project . . . ."

84. Plaintiffs performed as a finder of debt and equity for the Project and Defendants creating an obligation for Defendants to compensate Plaintiffs with the Finder's Fee.

85. Defendants received debt, equity or both from EIF and Natixis, after payment of the first Finder's Fee.

86. Defendants committed $195 million to the project, thus entitling Plaintiffs to a Finder's Fee of at least $1,950,000.00.

87. Defendants materially breached the Settlement Agreement by failing to pay the contractual Finder's Fee to Plaintiffs.

88. Plaintiffs suffered damages as a result of Defendant's material breach and are therefore entitled to the Finder's Fee of at least $1,950,000.00.

WHEREFORE, pursuant to 28 U.S.C. § 2201, FLA. STAT. § 86.011, and principles of law and equity, Plaintiffs request a judgment and decree finding Defendants materially breached the Settlement Agreement, all obligations of Plaintiffs pursuant to the Settlement Agreement are terminated, and compelling Defendants to account for the debt and equity they have received from EIF and Natixis since payment of the first Finder's Fee and to pay all Finder's Fees to Plaintiffs per the Settlement Agreement, plus pre-judgment and post-judgment interest, attorney's fees and

costs, and all other just and proper relief.

## COUNT II: ACCOUNTING AND RELATED RELIEF

89. This is an action for accounting against Defendants and Plaintiffs reallege and incorporate by reference paragraphs 1-77 as though fully set forth herein.

90. The Mandate Letter, Amendment to the Mandate Letter, Finder's Fee, and Settlement Agreement are parts of a complex transaction constituting a complex account between Plaintiffs and Defendants.

91. Plaintiffs performed as finders of debt and equity for the Project, while Defendants established a fiduciary, agency relationship between Plaintiffs and Defendants, and created an obligation for Defendants to compensate Plaintiffs with the Finder's Fee.

92. The complex account between the parties requires an accounting of equity and debt received by Defendants, from EIF and Natixis, to determine if Plaintiffs are currently entitled to the Finder's Fee and its amount.

93. Defendants received debt, equity, or both from EIF and Natixis, after payment of the first Finder's Fee.

94. Pursuant to the Settlement Agreement, PPH, on behalf of Defendants, "agrees to affirm past and future commissions earned and owed Consultant with respect to the ongoing financing of Project . . . ."

95. Defendants will not voluntarily disclose the debt or equity received from EIF and Natixis, and Plaintiffs have no adequate remedy at law to determine if they are owed an additional Finder's Fee by Defendants and the amount of the additional Finder's Fee.

96. Plaintiffs also cannot obtain disclosure of Defendants' debt or equity from EIF or Natixis through ordinary discovery as Defendants have not appeared in any prior case against them

and have not provided this information despite being requested to provide this information.

WHEREFORE, pursuant to 28 U.S.C. § 2201, FLA. STAT. § 86.011, and principles of law and equity, Plaintiffs requests a judgment and decree compelling Defendants to account for the debt and equity they received from EIF and Natixis since payment of the first Finder's Fee and to pay all Finder's Fees to Plaintiffs per the Settlement Agreement, plus pre-judgment and post-judgment interest, attorney's fees and costs, and all other just and proper relief.

Respectfully submitted on     June 29    , 2018.

/s/ Scott D. Widerman
Scott D. Widerman, Esquire
Florida Bar No. 585823
J. Mason Williams IV, Esquire
Florida Bar No. 98831
WIDERMAN MALEK, PL
1990 W. New Haven Ave., Ste. 201
Melbourne, Florida 32904
Tel. (321) 255-2332
Fax (321) 255-2351
Primary email: Scott@USLegalTeam.com
Secondary email: Mason@USLegalTeam.com